Good morning, Your Honor. May it please the Court, Kenneth Kossoff on behalf of Plaintiff Jeralyn Smith. I'd like to start this morning by responding to some of the arguments made in the supplemental briefs filed by both Mr. O'Keefe and MassMutual. First, with respect to Mr. O'Keefe, Mrs. Smith has never conceded, nor did the District Court find, that Mr. O'Keefe was an agent of what we've been calling MML, MML Investor Services Inc., a broker-dealer subsidiary. The Plaintiff alleged, and the District Court accepted, that Mr. O'Keefe was acting as an agent of Massachusetts Mutual Life Insurance Company, who we call MassMutual. In addition, even if the District Court had found that Mr. O'Keefe was an agent of MML, it wouldn't have mattered, because if the Court recalls, the District Court specifically found that the consideration for the arbitration agreement was the issuance by MML, not Massachusetts Mutual, but by MML, of the annuity policy. And since MML is not authorized to issue insurance policies in California, that was an illegal act, and actually a criminal act, under the California Insurance Code, Section 1631, 1633. Where in the record does it indicate that MML issued the variable annuity it issued in this case? Which is your allegation? Well, it was raised, I believe, for the first time in Mr. O'Keefe's reply brief from the District Court, and it is at ER 12, which is page 12 of the... But in fact, MML did not issue the annuity, did it? That was Massachusetts. That's certainly what we've claimed, but that's the District Court specifically found, that the consideration for the arbitration agreement was MML's issuance of the annuity. So if MML didn't issue the annuity, then there was no consideration for the arbitration agreement. What issue does this pertain to? Well, I think this pertains to a couple of different issues, and that is the enforceability of the arbitration agreement. Well, why is that a question for the Court instead of for the arbitrator, under Buckeye? Well, under Buckeye, I think the question under Buckeye is, if you're looking at the allegations of the unlawfulness of the entire agreement, rather than specifically an arbitration agreement, then the Court determines the unlawfulness of the underlying agreement. No. Where do you see that in Buckeye? That's exactly backwards. Buckeye says explicitly that the objection is the illegality of the contract. That's something that goes to the arbitrator. If it's the clause itself, if the objection is focused on the clause, which I don't see any place here, then the Court deals with it. Okay. And we also make no allegations with respect in the complaint, with respect to the arbitration agreement or in the original complaint that's been asserted against us to try and force us into arbitration. So why isn't this a question that belongs in front of an arbitrator instead of the Court? Well, I think that under – I'm sorry. There is illegal consideration for the arbitration, and that is something that the Court can decide. I don't know what that means. Okay. The consideration for the arbitration agreement, as found by the District Court on page 12 of its decision, was the issuance by MML of the annuity. And in the absence of – and given that that was unlawful consideration, then that is a matter that the – Unlawful because they can't issue the policy? That's correct. That sounds to me exactly what's covered by Buckeye. On the grounds of the illegality of one of the contract's provisions renders the whole contract in doubt. Well, you know, it's – I don't know that that particular is the contract provision. I mean, that's just the consideration that's found by the District Court. Again, we don't believe that MML issued the annuity. We believe that the annuity has Massachusetts Mutual's name and not MML's name plastered all over it. Well, the fact that you don't believe it doesn't mean the issue doesn't exist or the challenge hasn't been stated. And my point is it seems pretty clear under Buckeye that kind of challenge isn't to be resolved by the Court. It's to be resolved by the arbitrator. So why are we hearing it? Okay. I mean, I think that with respect to Buckeye, Emma, and in Buckeye the underlying contract was illegal, but the parties didn't argue that the arbitration clause in the contract was illegal. And? How does that differ from this case? Well, Your Honor, this is a, you know, the arbitration agreement is not part of the annuity agreement that the District Court found under 10.113 of the California Insurance Code. Have you stated any place an argument focused on an arbitration clause by itself? Well, Your Honor, the arbitration agreement is not a clause. It's a separate document from the annuity policy. The annuity policy contains no arbitration clause, nor was the arbitration agreement incorporated by reference into the annuity under section 10.112. You have an argument with regard to maybe she should make the argument. She should actually, but she has. You have an argument as to whether mass mutual is covered. I get that. But all these arguments with regard to the illegality somehow, because MML isn't licensed or so on and so forth, I just don't know how that come in front of us. And that's what I heard you start with. So that's why I say, why are we listening to this? What's the point of this? Well, I mean, I believe under Buckeye that the validity of the arbitration agreement itself was for the court and not for the arbitrator to resolve. But that's not what Buckeye says now, is it? I'm not looking at Buckeye at the moment. My understanding is that 546 U.S. and 444 to 446. That's the case citation. And this court also in the GROMPA held that the court can look at the totality of the circumstances with respect to the contracts. It's not just limited to the arbitration clause. And so with the attack, the question posed by Buckeye and the GROMPA is not inconsistent with that is, is the attack on the arbitration clause uniquely or is it on the contract generally? And the attacks I've heard from you are on the contracts generally, not on the arbitration clause uniquely. Okay. In the annuity agreement, there is no arbitration clause. In the annuity agreement, and the district court found there is no incorporation by reference of an arbitration agreement into the annuity agreement because it doesn't comply with the requirements of Section 10113 of the California Insurance Code that it either be endorsed or attached to the policy. Can I just kind of shortcut this? I'm following up on what Judge Clifton said. The reality here is Buckeye really forecloses much of what you're talking about. The real issue here to me, it seems, is whether mass mutual is part of the arbitration situation. They argue that it is for a number of reasons in terms of agency and estoppel and the like. Can you address those points? Because the reality is you're really shut out by Buckeye on most of your claim. You don't have a claim. It's just out of here anyway because it's a matter for the arbitrator, not for us. But on the other hand, if mass mutual or mass wife is not the beneficiary of the arbitration clause included in the investor account form, I think there was one other one as well, then you can arbitrate all you want with these other folks, but mass mutual is not covered, and you've got a whole separate issue. You could proceed separately against it. And that's what you're trying to do. Isn't that your goal? You don't want arbitration. That is correct. So let's focus there. So if you're going to get a recovery, you're going to get it through mass mutual. Correct. So why are you spending time on this? Okay. But then let me talk about the agency and the other issues that are involved, including fraud and bad faith. Did you ever diagram this case? Diagram it in terms of a flow chart. Figure out what the hell is going on. Well, I mean, I've tried to figure out what the hell is going on. Well, why don't you have the young lady do it? I tried. I said I tried. Okay. With respect to agency, the district court found that it was the parent-subsidiary relationship. DuPont and Thompson all are very clear that it takes more than the parent-subsidiary relationship. The agency wasn't raised until the reply brief, and there was no evidence of a parent-subsidiary agency that is sufficient to. It is clear, is it not, that the arbitration clause in the investor account form does not mention mass mutual, right? Absolutely clear. Okay, so I know that the mass mutual indicates that by virtue of the fact that the MML, I'll call it, is a subsidiary that under Leticia that it's entitled to enforce this. I don't read Leticia that way at all. Indeed, the concept that parent companies can enjoy the benefit of arbitration agreements made by their subsidiaries directly flies in the face of a whole bunch of law. So I'm interested in your take. Why is mass mutual entitled under any theory to enforce an arbitration agreement to which it is not a party but because MML is a party? They're not entitled under agency because that flies in the face of case law. They're not entitled under equitable estoppel because the elements of equitable estoppel under California law are not present. It wasn't Mrs. Smith who made representations to them. They, for example, claim that a couple of allegations in your complaint are binding judicial admissions. Can you address those points? Why are those distinguishable in this case? Well, I mean, I think what they're talking about is the boilerplate allegations that the defendants are agents of one another. Well, MML Investor Services, Inc. is not a defendant. Okay, so that takes care of that one. Because that's not a defendant. It's an opposite in this situation. So what about the other allegations? I don't recall which other allegations they're claiming were judicial admissions. Well, they say, for example, that mass mutual and some of its affiliated entities were and are engaged in providing various financial investment and insurance services and advice to elders such as Mrs. Smith. They cite that as a basis for giving mass mutual the benefit of the arbitration clause. Why is that allegation immaterial, irrelevant? They never articulated any evidence as to what MML was doing for them as their agent. They never put that into the record. And under DuPont, that was the same problem that the parent had there. And so simply by saying that a number of affiliated companies offer financial services doesn't mean that MML was acting as the agent of Massachusetts Mutual when Mrs. Smith was defrauded into buying the annuity. In addition- Why is there no equitable estoppel? Let's get to that one. And let me also say, given the disagreement between the potential agents and potential principals, how is Mrs. Smith to know if Massachusetts Mutual was supposedly having MML act as its agent when she was signing the arbitration agreement? They can't even agree on who issued the annuity. There's no way that she reasonably could have thought that she was buying- Where did the money go? The money was wired to- Who ended up with the money? Massachusetts Mutual Life Insurance Company. Now, in terms of equitable estoppel under the California Supreme Court's decision in Long Beach v. Mansell, the number one has to be a representation or concealment of material facts. They didn't make any allegations that Mrs. Smith made any representation or concealment of material facts. Number two, the party to be estopped has to have knowledge, actual or virtual, of the facts. There was no way that she could tell from the arbitration agreement that she was somehow buying herself to arbitrate with a company that was not mentioned in that agreement. Number three, the party who is asserting the estoppel needs to be ignorant. Well, MassMutual, we believe if it's true that what they were trying to do is an end run around insurance code section 10113, to have an arbitration agreement that's not part of the annuity contract under the California insurance code, but somehow nevertheless binds the insured, we think that was a fraud on their part, part of a fraudulent scheme if that's what they were trying to do. It wasn't Mrs. Smith- Well, you're kind of lapsing back into the other argument that you addressed, though. How do you know they just weren't stumbling around like you are? That's also a possibility. That's a good argument. Yes. And then find that the party asserting the estoppel was induced to act on it. Well, again, MassMutual wasn't induced by Mrs. Smith to act on anything with respect to the arbitration agreement. So that's why equitable estoppel doesn't apply in this situation. The other thing to consider is that even if there is agency, and I think it's clear that there's not, fraud and bad faith will also preclude the party from being able to take advantage of an arbitration agreement. And I mentioned the insurance code 10113 issue. This was not incorporated. Don't go there because that stumbles back to who's the decider. Okay. You're over time, but let me pose one question because it's essential for us to take this up. All the issues we've talked about have had to do with the arbitration. There's been not word won about the motion for a preliminary injunction, which is the piece of this appeal that we clearly have jurisdiction over. How is it we have jurisdiction over the rest? Well, Your Honor, I think you have jurisdiction over the rest because the district court's disposition of the preliminary injunction motion was entwined with. She said it's moved. That's pretty clearly wrong under Toyo Tire, which came down subsequently. Okay. So why do we take up the arbitration issue? We can deal with preliminary injunction pretty expeditiously. Well, I mean, I think that, frankly, they're inextricably intertwined under Hendricks. And and it's really necessary to review the arbitration. I mean, I guess I can review the motion, the denial of the motion, preliminary injunction without ever giving much thought to the arbitration at this point. I mean, Toyo Tire says the fact that the case has been dispatched to arbitration doesn't deprive the district court of the ability to rule on the motion for preliminary injunction. So why are they still inextricably tied? Well, Your Honor, as I read Toyo Tire, there were certain requirements. And I think Matt Spiegel agreed, you know, and you're the ones who decide what the case really means, not us. But it appeared to us that there are a variety of distinctions between our case and Toyo Tire. Oh, sure. But do you see anything there that suggests the district court doesn't have authority to entertain the question or that the issue is moot? Because if the district court's position is correct, the fact that something's been sent to arbitration means that the court doesn't have the power or its moot to consider the question of whether there should be a preliminary injunction. Toyo Tire cannot come out the way it does, because in Toyo Tire you had something dispatched to arbitration. So plainly, the district court's basis for decision can't survive Toyo Tire. Why do we have to give thought to arbitration in order to resolve the part of your appeal that we have jurisdiction over, which is the denial of the motion for preliminary injunction? What is it about the arbitration that affects that? Well, I mean, the arbitration, even though there would be injunctive, we don't meet the elements of Toyo Tire. If those elements aren't required to send it back to the district court, then I'm not sure I have a basis. Well, could they be? I mean, the district court denied the preliminary injunction on the ground it was moot. If that's true, Toyo Tire can't come out the way that it comes out. That's all I'm saying there. So the existing order can't survive Toyo Tire. But why do we have to think about the arbitration at all to resolve the appeal that's properly in front of us? Well, I guess my concern would be the district court might re-Toyo Tire the same way the parties did. Number one, for instance, since we're not trying to maintain the status quo, but we're trying to change the status quo. Well, there may be good reasons why you're not entitled to a preliminary injunction. Indeed, I think there are probably very good reasons why you're not entitled to a preliminary injunction. But that's not the question in terms of whether the district court's decision was correct. Or more importantly, that doesn't tell us why the arbitration issue is in front of us when the only jurisdiction we properly have is the motion for a preliminary injunction and whatever is inextricably tied to that. And I just don't see the connection at this point in time as to how the arbitration gets covered, the subject of arbitration gets covered by our authority to deal with the denial of the motion for a preliminary injunction. And I'm sorry, I can't. I think I'd be repeating myself if I tried. Hold on one second. I'm sorry. Why don't you save your time for rebuttal? Thank you very much. We don't have any time, but whatever time is given. Good morning. May it please the court. I'm James Moak, counsel from Massachusetts, Massachusetts Mutual. If I can, I'd like to reserve some of my time so that my co-defendant can use some time to the extent that's necessary. Your Honor, first of all, with regard to your question, I don't think I read Toyo Tire as broadly as you do or appear to. I don't think it requires in every instance where there's a motion to compel arbitration that the court also consider whether or not a preliminary injunction is appropriate, particularly whereas here the plaintiff, the appellant here, has on numerous occasions now said, I don't want to preserve the status quo. What I really want to do is win the case on a motion for preliminary injunction. So I don't think Toyo Tire requires a different result. If we agree that they have in effect waived any jurisdiction with respect to the injunction because, as you say, they're not asking for a change in the status quo and putting aside the other bases for reviewing the injunction issue, do we have jurisdiction to consider whether mass mutual is an appropriate subject of the district court's order on arbitration? I don't think you do, Your Honor, because that comes to you as in response to an order sending the case to arbitration, which is not an appealable order, unless perhaps it is inextricably intertwined with the order on the preliminary injunction. So basically, if there is no – if there's nothing out there that would permit a preliminary injunction, then we just don't have jurisdiction at this point to consider anything. I don't think – honestly, that was my initial reaction to all of this, Your Honor. I don't know why we're bothering this court with this at this point in time because I don't think you have jurisdiction to address. But can I ask you a question? Certainly. What is it – you want arbitration on this dispute? Yes, Your Honor. What is it that entitles Massachusetts Mutual to arbitration? I'm glad you asked the question. Well, thank you. In order to purchase this annuity, which was issued by Massachusetts Mutual, not by MMLISI – Well, what was MMI? What was their job? They were a – it's conceded by everybody in this case that they were a subsidiary of Massachusetts Mutual. What was their function? Their function, because this was a variable annuity that was being purchased, was to act as sort of an intermediary in the purchase of the securities that are used to fund the variable annuity. Again, everybody concedes that in order to get – What do you mean as an intermediary? Well, Your Honor, the record is not – I recognize that's vague. The record is not terribly clear about that, and I don't have independent personal knowledge to make it any clearer than that. What I do know, and what everybody concedes, is that in order to – So the subsidiary bought securities? The subsidiary, I think, was involved in the funding of the securities, yes. I do know that – What do you mean the funding? They used the money to buy securities. I – Your Honor, all the record reflects, and all that I can honestly say, and all the parties concede, is that in order to purchase the annuity, which involved held securities in order to fund it, you had to execute the investor account form that has the arbitration clause, which then permitted the issuance of the variable annuity. It's also conceded that MLSI is a subsidiary of Massachusetts Mutual. In response to – What would you point to as the evidence of consent or agreement on the part of Smith to an arbitration in this circumstance that includes arbitration of her claims against MassMutual? The investor account form, Your Honor. Do you think somebody who reads that is likely to figure out that this covers MassMutual? Well, I think to the extent anybody thinks about it at all. I mean, MassMutual and its subsidiaries draft these forms. They can put what they want to in there, and I have trouble figuring out how the customer is supposed to figure out from this that my claim against MassMutual is covered by arbitration. Well, with a common sense approach, Your Honor, she's executing all of these documents on the same day. There's a broker-dealer agreement. There are two of them, actually, both of which have arbitration clauses. There's the investor account form that has an arbitration clause. But neither one of which includes MassMutual as a party, right? By name, no. But she knows that she has to execute them in order to get the MassMutual annuity. Is this some kind of a con game that's going on? Is this a con game? Yeah, I want to know that. So why didn't MassMutual just issue the annuity to her, take the money and give her the annuity? What do you need this intermediary for? Your Honor, I'm not confident to answer that question except to say it's a variable annuity and involves holding security. You're confident that this is the work you do. Yes, I understand that. You know, it kind of smells to me. Your Honor, I mean, what is the purpose of having this intermediary? I thought, well, maybe they're doing the accounting or some legwork so you don't have to send the work overseas or whatever. I don't know. I mean, maybe this is how we got into trouble in our economy. Maybe this is just part of it. Not the intent, I'm sure, Your Honor. Can I ask you a question that kind of flows from it? Well, I mean, the intent was to take this woman's money and get her one of these variable annuities. Isn't that right? The intent was to bring... Then it turned out that the mortgage on her house, she'd only have to pay a limited amount, but then the principal amount would increase. I mean, what's going on? Well, if you're asking me whether or not this was a good investment for her, I think it probably was. It's a lot like a reverse mortgage. You know, she's borrowing money out of her house to generate income for herself. Now, the problem in this particular case is, you don't have the problem with 401ks that I have, but I will tell you that the stock market tanked. That will be no surprise to you, and I think what we have here is a situation where we have buyer's remorse because of that. Your Honor, I'm sorry. Yeah, I just want to... I don't know that she really understood what was going on here with all this hocus-pocus that was taking place. The company made every effort to make sure that she did understand that, Your Honor. Let me follow up with a question, if I may. Let's assume for a moment that we have no jurisdiction because the injunction has essentially been waived by virtue of their concession. They're not trying to change the status quo. But let's also assume for a moment that the bases that you cite, Leticia, which I think you badly misconstrued, not you personally, but your clients and the claim here, and I don't see anything else in here that ties MassMutual into this, and that is into the arbitration clause. What's the remedy that Mrs. Smith has under the circumstances? Well, if MassMutual, as a matter of law, is not entitled to the benefit of the arbitration clause, is she stuck with going through the arbitration and then seeking after the fact to show that MassMutual should never have been included? I think that's right, Your Honor, but I don't think we badly misconstrued it. No, I'm just saying hypothetically. The reasons you give don't fly from my perspective, hypothetically. What's her remedy? She goes through the arbitration and then goes back and tries to claim that MassMutual was never a party to this and therefore is not entitled to the benefit of the arbitration? Well, first of all, the question assumes that she's not satisfied with the outcome of the arbitration. Yeah, of course. But if she's not satisfied with the outcome of the arbitration, yes, that's what she does. That's a state court action, I assume. Well, we're pending in federal court, so I think she would be back in front of this court. But let me try to undercut your hypothetical for one second, if I can. Okay. One, I would encourage the court to look at a case, and the district court cites it, but we didn't cite or at least put too much emphasis on it in the brief. It's called J.J. Ryan v. Roan, H. 6-3, F. 2nd, 315. It's a Fourth Circuit case. I'm sorry, what's the site again, please? It is H. 6-3, F. 2nd, 315. It's a Fourth Circuit case, but it's been followed by, I think, six of the other circuits. Well, this is a district court case. No, it's not, Your Honor. Did you say F. 2nd or F. 2nd? F. 2nd. 2nd. Okay, never mind then. I'm sorry, I'm not enunciating well. Okay, so H. 6-3, F. 2nd, 315. 350. And that's Fourth Circuit. And it says the parent, as the situation we have here, the parent can enforce an arbitration clause in and into by a subsidiary. You mean, I mean, this is your point. I mean, you're saying that a parent company, just by virtue of the fact that it has a subsidiary, is entitled to enforce the arbitration clause. I mean, that flies in the face of all agency law. I mean, that doesn't make any sense. No, that's not what I'm saying, Your Honor. It isn't the parent-subsidiary relationship alone that resolves the question. It's the fact that the acts of the parent and subsidiary are intertwined in the course of the transaction that's involved in the litigation, to say that allows the subsidiary and the parent to both enforce the arbitration clause and, in fact, allows plaintiff, if she chooses to, to enforce the arbitration clause against the parent and the subsidiary, even though the parent did not sign. Now, in the interest of fairness. In the source of most of the cases, the situation you just described, where the author of the documents includes only the subsidiary or agent and not the parent, and Letizia and most but not all of the decisions in this field basically say the investor, the complainant, the aggrieved party can break through the limitation of the arbitration clause and have the arbitration include the parent or whatnot. There are many fewer cases the other way around. I think the Fourth Circuit case, which I sort of recall, is one of them. But why should that be so? Why is it then that, in this case, if the people on the mass mutual side are the ones responsible for preparing the documents, and they prepare documents that don't appear to indicate on their face that mass mutual itself is a part of this clause, why is it they should be able to argue? Count us in. Excuse me. Two reasons that I can think of. One is what the Court says. We have a Federal predilection for arbitration. Federal all favors arbitration. The presumption doesn't exist with regard to the formation of the agreement in the first instance. There is not an assumption that a party has made an arbitration. That's true. And that's the piece that really troubles me here. I have difficulty seeing how the customer in this case would understand from this set of agreements that mass mutual is part of an arbitration clause. So the claim against mass mutual, it goes to arbitration. Well, Your Honor, about all I can do for you there is to go back and look at all of the documents that were all executed on February 17, 2006, as part of this one single transaction to purchase mass mutual life insurance annuity. And three of them say arbitration. None of them say, oh, by the way, if you don't like this, you can go to court. But with that, if I can defer to my co-counsel and give him a chance to address the Court. Thank you for your time. Thank you, Your Honor. My name is Joe Tabreski, and I represent Defendant Apelli, the Denver O'Keeffe Agency. If you would, Judge Clifton, I'd like to address one, and I'm not sure which one of the panel would ask this question. But first is that at no time did the Denver O'Keeffe Agency, before the trial court ever, state that the variable annuity was issued by MML Investor Services. In fact, the record shows that at pages 58 through line 26 through page 59, line 7, as well as at page 66, paragraph 6, that MML Services played an important role with regard to the application process, but ultimately as sort of a precursor to the issuance of the variable annuity by MassMutual, so that the role of MML was critical to the issuance of the variable annuity. Now, Your Honor, one of the questions... What do you mean critical? The reason that MML is critical is that it had to be registered... Tell me why MML was there in the first place. Because it's registered in the financial under FINRA. It is registered to issue the securities. MassMutual could not do that without having MML Investor Services. Could MassMutual have been listed as a beneficiary of the arbitration clause if it is not a licensed entity for purposes of selling these securities? Under the investor account form? Right. I'm not sure whether it could or could not be. We did not address that. The issue was estoppel to some extent addressed by the court with regard to the fact that you had a signatory to the arbitration agreement in the context of the plaintiff, and she was now trying to go around the arbitration clause in the investor account form by not bringing in MML Investor Services. That's where the analysis of the estoppel, as it's applied to a signatory... Clearly, your client is a signatory to the arbitration agreement. I don't frankly see how Mrs. Smith, under any circumstances, can avoid arbitration with you. My concern is with MassMutual. I understand. So the reality is that do you agree with your co-counsel that Mrs. Smith has no remedy at this point before our court because we don't have jurisdiction? I do agree, Your Honor, because there is most certainly a separation between the or a disconnect, as I refer to it in the supplemental brief, between the motion for preliminary injunction and the motions to compel arbitration. I think that's both substantively when you look at the nine different points under the motion for preliminary injunction and compare them to the issue of the investor account form and what's said in there and the aspect of arbitration. So I do see the disconnect. It's even broader and more apparent when you compare the motion for preliminary injunction to the Denver O'Keefe agency because it was clearly directed at MassMutual in the first instance. And to answer the question regarding Toyo Tire, I do think that when you read Toyo Tire, it gave a limited basis for a court to hold on to and decide a motion for preliminary injunction. If that motion was to preserve the status quo so that the arbitration could proceed. In the particular instance of Toyo Tire, Toyo Tire came into the court saying, look, we want to arbitrate before the ICC. We can't do so if in five days we're out of business because all of our inventory is taken. So it sought the injunction so that it could have an environment to pursue the arbitration before the ICC. That clearly is not being done by the plaintiff in this case. I see that my time is up. Well, that's all right. We've got lots of time. We really don't. We can give up lots of time. Indeed. In my particular, with regard to the issue of arbitration, as it relates to the Denver O'Keefe Agency. What about that? Is there an arbitration agreement? Ms. Smith was your client. No, my client is the Denver O'Keefe Agency. Well, I mean, I'm looking. Oh, I see. You're the agency. Your client's client. You're your client's client. My client. That is correct. You're your client's client. That's correct. So she dealt with the Denver O'Keefe Agency. That's correct. And they were the broker agents of MML. MML and Mass Mutual. And Mass Mutual. That's correct. Okay. So, and you were the ones that brought this deal over to MML. That's correct. Okay. Now, so, in other words, you have an arbitration agreement with Smith because, has she been dealing with you in the past? There had been a prior transaction involving a transfer of a mutual fund account from Charles Schwab to MML. Oh, that's right. Okay. So where's that arbitration agreement found? Which one? In the original transaction or the second transaction? Well, whenever you had a transaction, you had her sign an arbitration agreement? Yes, Your Honor. There were three different documents that were attached to the first amended complaint. Each of them had- That's not the same one that was in the deal with MML Investment. Each one of those agreements was, in fact, with MML Investors on all three. The first set also was with the clearinghouse broker, was an additional party to the first set. That's included in the brokerage agreement and the customer agreement that was an amendment to the broker agreement. So the terms of the arbitration agreement between Smith and Denver O'Keefe are the same in terms of the agreement involving Smith and ML Investment Securities? That's correct, under the investor account form as it relates to this particular transaction. In other words, you have the same piece of paper? Yes. Yes, Your Honor. And so you have an agreement with Smith and MML has one with Smith and they're two separate agreements and they're identical? No, we are part of the investor account form was signed by the Denver O'Keefe agency as well as MML. So just that one form that's kind of typewritten and all that, right? Correct. It's attached as, I believe, Exhibit C to the first amended complaint. I have one other question here and that has to do with our jurisdiction again. In this case, the district court engaged in about 30 pages of analysis about the arbitration order and then just kind of dealt with the preliminary injunction request as moot. But in this case, the mootness came about as a result of the analysis with respect to the arbitration order. Why is that not then, in quotes, inextricably bound up with the order compelling arbitration? When you look at the last series of paragraphs in the order, there is the holding of granting the two motions to compel arbitration. And then there's the denial of the preliminary injunction. The analysis, when you read the order, is dealing with agency with regard to the Denver O'Keefe agency is separate to some extent. And then there's a whole analysis done with regard to mass mutual. Right. But say, for example, that because all of the analysis basically dealt with the arbitration order, and if hypothetically we disagree with respect to the analysis with respect to mass mutual, and the court just basically assumed the preliminary injunction under toil, why should we not send it back to the district court to reconsider under winter standards whether the injunction should be issued and also address the issues with respect to mass mutual and whether or not it is covered by the arbitration agreement? If I understand your question correctly, Your Honor, if you look at the analysis as it relates to agency, that does not touch upon the issues that are being raised in the motion for preliminary injunction. When you do an analysis of inextricably intertwined, the courts have said the way you approach it is whether the legal theories, whether the same legal standards are going to be applied to the two issues. When you take a look at the question of agency, which is the issue as it pertains to the motion to compel, that's a totally separate standard than what you have to do with regard to the motion for preliminary injunction. And I recognize the fact that the injunction request was botched in every respect as far as the request. I'm struggling with our jurisdictional issue here. So your answer is basically since the analysis with respect to the agency has absolutely nothing to do with the issues that were required for a preliminary injunction, which would be the basis of our jurisdiction under 1292A. That's correct. Then we still have no jurisdiction. Thank you. OK. If there are no further questions, I'll submit. I finally have a couple of minutes to address some of the issues raised. You got a big problem. Big problem with jurisdiction. Very big problem with jurisdiction. Why? Why do we have jurisdiction here? Well, I mean, we don't read Hendricks and Krakenbusch as narrowly as apparently they do and apparently as you may read it. You know, we think that they were inextricably intertwined. What about counsel's point, which I think is a correct one, Mr. Tabriski, I believe. What about his point that under the case law, in order for something to be inextricably intertwined, that the analysis, in this case, both of the arbitration issue and the injunction have to essentially be the same. Do you agree with that? I don't believe that Hendricks. In that what the cases call for. I don't think Hendricks calls for that. Not just Hendricks, but a number of cases. I don't believe so. You do agree that the analysis is wholly different, do you not? The issue of whether somebody is an agency and so on, as opposed to what you have to show in order to get an injunction. It is a different legal issue. And do you agree that, in effect, you have waived the request for the preliminary injunction by saying you're not trying to change the status quo? No. That's what your pleading says. No, I think what we said is that we are trying to change the status quo. We are trying to enable. Same question. Just take out the not. Okay. I believe we are trying to change the status quo. And doesn't that say that's why you're not going to get the preliminary injunction? You're not asking us to send it back for that purpose now. Well, in the supplemental brief, I think we said Toyo Tire seems to require that the injunction not seek to change the status quo. And since we're seeking to change it, that's one of the reasons why we didn't think Toyo Tire applied here. And we also have the issue that in non-industry cases, FINRA has no jurisdiction to issue injunctions. Likewise, my fear is not just that we're going to go to FINRA. Has FINRA turned the case down? FINRA hasn't. No. FINRA hasn't turned the case down. What's happening in the arbitration? Your Honor, we're appealing here to try and avoid going to arbitration. If we fail, then we're going to have to go to FINRA. And then FINRA may decide to take the case and may decide not to take the case. I think we've expressed our concerns under the FINRA rules as to whether the FINRA has jurisdiction of mass mutual. And if the court were to remand this to the district court, I would ask the district court to examine those issues. Is there any reason that you couldn't have gone forward with that in the meantime? I mean, you're the one that's talking about the need for urgency. Now six months have passed. Okay. Well, had we filed with FINRA, I'm sure we would have faced the argument that the appeals moot they've already filed with FINRA. Well, you wouldn't be treated as having waived your objection. I mean, we went through the scenario. At the end of the day, if you don't like the arbitration results, presumably you come back to court if you're not able to do it here and complain we shouldn't have been compelled to go to arbitration. What is it – why would you be waiving any rights if you'd let the arbitration process go forward in the meantime? Well, Your Honor, I mean, I think either way we would have done it. We would have been subject. And so a couple other points I'll make in response. First off, this isn't like a reverse mortgage because in a reverse mortgage you don't have monthly payments on your mortgage. That's a huge difference. With respect to the J.J. Ryan case, I think if the court looks at it, it will find that the allegations made against the parent were made against both the parent and subsidiary, and they were similar allegations. You have that here too, don't you? No, we have not made any allegations against MML, ISI. But your allegations don't really go to the terms of the annuity. It goes to how it was sold. Well, actually it goes to both because we do believe that their failure to include the word surrender charge is a violation of the California Insurance Code. But that's basically an allegation against MML and its agents, right? It's against Massachusetts Mutual Life Insurance Company, not the securities, not the broker dealer, not what we call MML. But the vast majority of complaints seem to have to do with how it was sold to your client. Well, certainly there was fraud involved, yes. We're making serious allegations against Mr. Brown. If you look at his handwritten letter to Mrs. Smith, he made representations to her both orally and in writing that were materially false. Aren't those classic claims against a broker dealer? As far as we are concerned, Mr. Brown was representing Massachusetts Mutual Life Insurance Company. He was making these arguments on behalf of them. When it was brought to their attention, when they saw the allegations, when I tried to settle this case before we filed suit, they ratified his acts. And so as a result, they're liable for his acts. And the broker dealer, as far as we're concerned, that more had to do with the securities account, which we did not raise as an issue in the First Amendment complaint. We have no allegations against MML, ISI. And if you also, if we look back at the letter that- Have you ever tried our mediation service? What's that? You know about our mediation service? Yes, Your Honor. We tried to settle before the case was filed since that time. Have you gone to our mediation service? I had spoken with him, and we had been contacted by the mediation service, and I had expressed, I don't know if I could say it, our willingness to mediate, and I never heard back. And if you're also in that handwritten letter, and also in Mrs. Smith's declaration in the lower court record, that Mr. Brown was pretty clear that you've got MML that's dealing with your securities account and Massachusetts Mutual Lunch Insurance Company, who is dealing with your annuity. But ultimately, you're basically trying your case before a trier of fact. We have to have jurisdiction to hear the case in the first place, and we're troubled by the fact that it's difficult to see where we have it. Again, the way we read Clappenbush and Hendricks in those cases was that they were inextricably bound together, and that as a result this court had jurisdiction to consider the arbitration order because of the denial of the preliminary injunction. So obviously, if we can't convince the court that it has jurisdiction, then Mrs. Smith is between a rock and a hard place in terms of... She's before an arbitrator. Well, I mean, assuming the arbitrator will listen to her because... Well, she would be able to make her argument. We don't know what the result would be. No, what I mean is assuming Fender will take jurisdiction because I don't think they're in the business of adjudicating elder abuse claims at the California Insurance Code. Then you're back in court, which is one of the reasons I'm puzzled why you didn't get that question answered in the meantime. Uh-huh. Okay. I mean, we made a strategic decision on which criticism we were going to take, and we're taking this criticism as a result. Well, would Mass Mutual be interested in a mediation service? Well, I don't know what happened with that. I think we were told about an annual mediation. The company is always interested in mediation. What? I'm sorry. I know that came up as part of the court's process. I don't know what happened with it, but Mass Mutual is always interested in mediation and settlement if it's economically feasible. This should be seriously considered. It was rejected from the mediation program. We don't know why. Sometimes the mediators wind up saying the parties haven't advanced far enough to know what's really involved. And the early indication is that the factual perceptions are miles apart. But both parties are sentencing themselves to a whole lot of litigation, with the possibility is if it gets sent into arbitration, you still don't know that it will stay there in the end because the plaintiff would have an ability to go out and say it shouldn't have been compelled to go to arbitration in the first place. So the end result could be the plaintiff gets two bites at the apple. So we're kind of asking you, and you may need to consult with your clients for ten days or something, but if the parties are amenable, this does have the look of a kind of case that can get resolved earlier than later, and earlier would save a whole lot of time and trouble. Particularly given the fact that, at least for myself, I've got real questions about ultimately whether Mass Mutual is covered by that. So if you have that in mind, if you can get this resolved in a mediation, we can hold off if you all decide to do that on our disposition in the meantime. But I think what you're hearing is all three of us are saying this is just going to drag on. If it goes to arbitration, they're going to come back and say Mass Mutual should never have been there. And if that's the sole question and that comes up, I've got to tell you, I've got some problems with it. This is a business we're dealing with, Your Honor, and they are typically good at making good business decisions. So I'm happy to take it to them. Please do. All right. Thank you for your time. We'll send a note out to back this up. I'm sorry? We'll send a note out to back this up. Okay, great. Yeah. Thank you very much. We have a very, very excellent service. We have skilled mediators, and I think it's free. It is. It is. You know. At least our service is. Our service is free. Thank you very much. And, you know, you can always make loans and do things like that. I'm joking. Thank you very much. All right. So we're submitting? And the court will recess until tomorrow morning. Thanks. This court for this session stands adjourned.
judges: Pregerson, Clifton, Smith M.